## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ASCENDIUM EDUCATION SOLUTIONS, INC.,

2501 International Lane,
Madison, WI 53704

        Plaintiff,

    v.

BETSY DEVOS, in her official capacity as
Secretary of the Department of Education,

Office of the Secretary
400 Maryland Avenue, SW
Washington, D.C. 20202, and

THE DEPARTMENT OF EDUCATION,

400 Maryland Avenue, SW
Washington, D.C. 20202,

        Defendants.

Civil Action No. 19-3831

## COMPLAINT AND PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Ascendium Education Solutions, Inc. ("Ascendium"), by and through its attorneys, alleges:

### PRELIMINARY STATEMENT

1. This case concerns the Secretary of the Department of Education's ("Department's") authority to override provisions of the Higher Education Act ("HEA") establishing that all defaulted Federal Family Educational Loan Program

("FFELP") borrowers must pay fees to offset the costs FFELP guarantors incur engaging in collection activities and helping borrowers get out of default.

2.     Two HEA provisions are central to this action.

3.     First, the HEA provides that any borrower in default "shall be required to pay … reasonable collection costs" on defaulted FFELP loans.[1]

4.     Second, the HEA creates a distinct rehabilitation fee to be charged when a loan is rehabilitated. The HEA allows borrowers to rehabilitate their defaulted loans by making a series of statutorily prescribed "reasonable and affordable" payments based on a borrower's total financial circumstances. The HEA provides that when a guarantor sells a rehabilitated loan, the guarantor may "charge to the borrower an amount not to exceed 16 percent of the outstanding principal and interest at the time of the loan sale."[2]

5.     Despite this clear statutory language, the Department recently promulgated the Guaranty Agency Collections Fee Rule ("Rule"),[3] which prohibits FFELP guarantors from charging and receiving both reasonable collection costs and the rehabilitation fee when a defaulted borrower enters a rehabilitation agreement or other "acceptable repayment agreement" within 60 days of receiving notice of default and subsequently honors that agreement.

---

[1] 20 U.S.C. § 1091a(b)(1).

[2] 20 U.S.C. § 1078-6(a)(1)(D)(i)(II)(aa); *see also* 20 U.S.C. § 1078-6(a)(1)(E)(ii).

[3] This new rule is referred herein as the "Guarantee Agency Collections Fee Rule" or "Rule," and it is the Department's amendment of 34 C.F.R. § 682.410(b)(2).  *See* 84 Fed. Reg. 49788, 49926 (amending 34 C.F.R. § 682.410(b)(2)), *Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program* (Sept. 23, 2019)).

6.     The Rule it is at odds with the HEA's clear and unambiguous statutory language requiring defaulted borrowers to pay reasonable collection fees whenever there is a default and a rehabilitation fee whenever a defaulted loan is rehabilitated.

7.     If Congress creates a mandate, it is for Congress, not administrative agencies, to create exceptions.

8.     The Rule exceeds the Department's statutory authority, is arbitrary and capricious, and is otherwise not in accordance with law. The Rule consequently should be declared unlawful and set aside.

## THE PARTIES

A.     THE PLAINTIFF

9.     Ascendium is a nonprofit corporation incorporated in and with its principal place of business in Wisconsin.

10.     Ascendium is a guaranty agency[4] within the meaning of Subchapter IV of the Higher Education Act.[5]  It currently serves as designated FFELP guarantor in 27 U.S. states and territories.

11.     Ascendium is also one of the nation's largest higher-education philanthropies. It has made nearly $100 million in grant commitments in 2019 alone, all aimed at helping increase traditionally underserved populations' access and success in higher education. Ascendium uses the money it obtains from its guaranty operations to fund its philanthropy.

---

[4] This Complaint uses the terms "guarantor" and "FFELP guarantor" to mean "guaranty agency" as defined by 20 U.S.C. § 1085(j).

[5]  20 U.S.C. §§ 1070-1099d.

12.     As an FFELP guarantor, Ascendium holds defaulted FFELP loans. Ascendium is obligated by statute and regulation to undertake collection activities and enter into rehabilitation agreements with qualifying borrowers. HEA-permitted fees help Ascendium offset its costs for performing these activities. The Rule prevents Ascendium from recovering fees for which the HEA expressly provides.

13.     Ascendium submitted comments opposing the Rule at both the Negotiated Rulemaking stage and in response to Defendants' Notice of Proposed Rulemaking.[6]

B.     THE DEFENDANTS

14.     Defendant Betsy DeVos is the Secretary of the Department of Education. Her official address is 400 Maryland Avenue, SW, Washington, D.C. 20202.  She is being sued in her official capacity. In that capacity, Secretary DeVos has overall responsibility for the operation and management of the Department, including the Department's administration of all rules implementing the HEA.[7] She is responsible for the Department's final promulgation of the Rule.

15.     Defendant Department of Education is, and was at all times relevant to this complaint, an executive branch agency of the United States.[8] It is subject to the

---

[6] When it submitted comments, Ascendium was known as Great Lakes Higher Education Guaranty Corporation.

[7] 34 U.S.C. § 3411.

[8] 34 U.S.C. § 3411.

Administrative Procedures Act.[9] The Department is located at 400 Maryland Avenue, SW, Washington, D.C. 20202.

## JURISDICTION AND VENUE

16.    This action arises under the Administrative Procedures Act.[10] Jurisdiction lies in this Court pursuant to 28 U.S.C. § 1331.

17.    Venue is proper in this Court because this is an action against officers and agencies of the United States, the Defendants reside in and perform their duties in this judicial district, a substantial part of the events giving rise to this action occurred in this judicial district, and no real property is involved.[11]

## FACTUAL ALLEGATIONS

A.    FEDERAL FAMILY EDUCATIONAL LOAN PROGRAM

i.    FFELP Background

18.    FFELP is part of the HEA.[12]  It has helped millions of students pursue a higher education by allowing people without the collateral or credit history to borrow money in traditional lending markets to get student loans. It accomplishes this through a two-tiered insurance model in which:

- Private lenders make FFELP loans without traditional underwriting requirements;

---

[9] 5 U.S.C. § 551(1).

[10] 5 U.S.C. §§ 553, 701-706.

[11] 28 U.S.C. § 1391(e)(1).

[12] 20 U.S.C. §§ 1071, *et seq.*

- Guarantors insure lenders and purchase defaulted loans if lenders have satisfied certain statutory and regulatory "due-diligence" requirements; and

- The Department reinsures guarantors and takes over "uncured" defaulted FFELP loans if guarantors have satisfied their own set of statutory and regulatory "due diligence" requirements.

19.    In 2010, Congress discontinued the FFEL program for new student loans.[13] But millions of borrowers continue to have—and guarantors continue to insure or hold—legacy FFELP loans.

20.    Guarantors play a pivotal role in the FFELP framework even before loans default. For example, guarantors provide financial aid outreach and develop high-quality financial management programs that address debt management and financial literacy.[14] Guarantors also engage in default aversion activities aimed at helping delinquent borrowers avoid default.[15] And guarantors assume loans in instances other than default, including when borrowers have pending bankruptcies.

---

[13] *See* 20 U.S.C. §§ 1087a, *et seq.*

[14] *See, e.g.,* 20 U.S.C. § 1083a(a) (requiring guarantors to "develop and make available high-quality educational programs and materials to provide training for students and families in budgeting and financial management, including debt management and other aspects of financial literacy"); *see also* 20 U.S.C. § 1072b (permitting guaranty agencies to use agency operating funds to engage in "school and lender training, financial aid awareness and related outreach activities, … and other student financial aid related activities").

[15] 20 U.S.C § 1078(l).

ii. FFELP Default

21. When a borrower is delinquent for 270 days, the loan is in default,[16] and a lender has 90 days to submit a default claim to the guarantor.[17]

22. Once a lender makes a default claim, the guarantor must engage in numerous activities mandated by statute or regulation.

23. Guarantors must vet lenders' default insurance claims and verify that lenders have satisfied numerous "due diligence" and other requirements for obtaining FFELP insurance (including asking the guarantor to engage in mandated "default aversion" activities).[18] Guarantors then must pay qualifying lender claims and assume defaulted loans.[19]

24. Within 45 days of paying lender claims, guarantors must:

- Send defaulted borrowers a notice that demands repayment and otherwise informs borrowers of their obligations, options, and rights;[20] and

- Provide borrowers with a 60-day debt substantiation period to verify and challenge the amount due through a process that includes an administrative hearing for borrowers who seek it.[21]

---

[16] 20 U.S.C. § 1085(l). The HEA provides that loans with longer-than-monthly payment installments are in default 330 days after delinquency. *Id.* The loans held or guaranteed by Ascendium provide for monthly installment payments.

[17] 34 C.F.R. § 682.406(a)(5).

[18] 34 C.F.R. § 682.406(a).

[19] 34 C.F.R. § 682.406(a).

[20] 34 C.F.R. § 682.410(b)(5)(vi)(D); 34 C.F.R. § 682.410(b)(6)(ii).

[21] 34 C.F.R. § 682.410(b)(5)(ii)-(iv).

25.     To locate borrowers, guarantors must also engage in skip-tracing.[22]

26.     After the 60-day period for the borrower to administratively challenge the default elapses (or after an administrative challenge is denied), guarantors must engage in additional activities including credit reporting and, if borrowers have not made payment arrangements, tax-offsets and wage-garnishment.[23]

27.     In the mid-1980's, Congress grew concerned federal taxpayers were footing the bill for collecting on defaulted student loans. So in 1986, Congress amended the HEA to provide that any borrower in default "shall be required to pay … reasonable collection costs" on defaulted FFELP loans.[24]

### iii.   Loan Rehabilitation

28.     In 1992, Congress made available to all first-time defaulters a default-reduction program codified in regulations as "loan rehabilitation."[25]

29.     Rehabilitation is a way for first-time defaulters to establish a sufficient repayment track record to get their loans purchased out of default by a FFELP lender and get back in good standing.

---

[22] 20 U.S.C. § 1078(c)(2)(G); 34 C.F.R. § 682.406(a)(14).

[23] *See, e.g.*, 20 U.S.C. §§ 1091a(b)(2)(B) (preempting state limitations on guarantor attempts to collect on defaulted FFEL Program loan through litigation, offset, garnishment, or other action); 1095a (authorizing guarantors to garnish wages of defaulted borrowers); 31 U.S.C. § 3720A(a) (authorizing third-parties acting as agent of federal government to seek tax offset where federal agency is owed a past-due legally enforceable debt); *see also* 34 C.F.R. § 682.410(b)(6)(ii),(v)-(vii).

[24] 20 U.S.C. 1091a(b)(1).

[25] P.L. 102-325, Sec. 420; *see also* Dear Colleague Letter (DCL) GEN-92-21 at 20-21 (Oct. 1992). Today, loan rehabilitation is codified at 20 U.S.C. § 1078-6(a).

30.     To rehabilitate a defaulted loan, a borrower must enter a written rehabilitation agreement with a guarantor.[26] The terms of such agreements are dictated by the HEA and implementing regulations, and guarantors are required to allow qualifying borrowers to rehabilitate.

31.     To rehabilitate a defaulted loan, borrowers are required to make "9 payments ... within 20 days of the due date during 10 consecutive months" in an amount that is no "more than is reasonable and affordable based on the borrower's total financial circumstances."[27]

32.     Making the nine payments alone is insufficient to rehabilitate a defaulted loan. The HEA also requires guarantors to broker the sale of the loan to an FFELP lender. If no buyer can be found, a guarantor must assign the loan to the Secretary.[28] At the time of statutorily mandated sale, the guarantor must remove the default and, "in order to defray collection costs— ... charge to the borrower an amount not to exceed 16 percent of the outstanding principal and interest[.]"[29]

33.     Loan rehabilitation is not loan repayment. Monthly loan rehabilitation payments can be as low as $5 under the reasonable and affordable rehabilitation

---

[26] 34 C.F.R. § 682.405(b)(1)(vi).

[27] 20 U.S.C. § 1078-6(a)(1)(A), (B).

[28] 20 U.S.C. § 1078-6(a)(1)(A); *see also* 34 C.F.R. § 682.405(a)(2)(i)(ii) ("A loan is considered rehabilitated only after" timely payments are made and "[t]he loan has been sold to an eligible lender or assigned to the Secretary").

[29] 20 U.S.C. § 1078-6(a)(1)(D)(i)(II)(bb); *see also* 20 U.S.C. § 1978-6(a)(1)(E)(i) (guaranty agencies "duties upon assignment" include adding an amount equivalent to the sold-to-new-lender rehabilitation fee to rehabilitated loan's principal and interest at the time of assignment to the Secretary).

calculation. This means that borrowers can rehabilitate their loans for as little as $45 in total payments. After rehabilitating the loan, though, the borrower must resume a regular repayment schedule with the new lender.[30]

34.    A guarantor's work (and costs) associated with rehabilitating a loan is the same whether a defaulted borrower enters a rehabilitation agreement within 60 days of receiving the guarantor's initial default correspondence or the borrower enters a rehabilitation agreement more than 60 days after receiving the initial default correspondence from the guarantor.

B.    PRE-RULEMAKING TREATMENT OF GUARANTOR COLLECTION FEES AND THE REHABILITATION FEE

    i.    The Department Permitted Guarantors To Charge Collection Fees And Rehabilitation Fees Without Regard To When Borrowers Entered Rehabilitation Agreements

35.    For more than two decades after Congress' 1986 mandate that borrower pay "reasonable collection fees,"  guarantors assessed such standard default collection fees on a per-payment basis.  Likewise, for more than two decades after Congress established the loan rehabilitation program in 1992, guarantors charged the statutorily established rehabilitation fee when loans were rehabilitated.

36.    And, for more than two decades after Congress' 1986 and 1992 provisions mandating payment of the standard default collection fees and permitting the assessment of rehabilitation fees, the Department permitted FFELP guarantors to charge both types of fees regardless of when a defaulted loan was rehabilitated.

---

[30] *See* 34 C.F.R. § 682.405(b)(1)(vi)(A).

37.    The Department regularly audited guarantors to ensure their compliance with its rules and guidance and never challenged guarantors' practice of charging both standard collection fees and the rehabilitation fee whenever a loan was rehabilitated, regardless of whether the borrower entered a rehabilitation agreement before or after the 60-day debt substantiation period.

ii.    *Bible*, the Dear Colleague Letter, and the Dear Colleague Letter Withdrawal

38.    In 2015, the Department changed its position with respect to guarantors' assessment of collection fees and rehabilitation fees in an *amicus* brief filed by the United States in *Bible v. United Student Aid Funds, Inc.*

39.    *Bible* was a putative class action lawsuit brought against an FFELP guarantor alleging, among other claims, that FFELP loan agreements incorporate the HEA and that HEA regulations do not permit guarantors to charge collection fees or rehabilitation fees to defaulted borrowers who promptly enter into and satisfy a rehabilitation agreement.

40.    At the *Bible* court's invitation, the United States filed an *amicus* brief stating that "[t]he Department interprets [HEA] regulations to provide an exception to the requirement to charge collection costs when a borrower promptly enters into a loan repayment agreement (including a rehabilitation agreement) within [60 days] after the borrower has been notified by the guarantor that it has paid a default claim." The Department's position, as articulated in the *amicus* brief, treated the rehabilitation fee as falling under the ambit of collection fees.  Its position was that guarantors may not assess standard default collection fees or the rehabilitation fees

when a defaulted borrower enters into a rehabilitation agreement within 60 days of being notified that a guarantor has paid a lender's default claim.

41.    The Department's position in *Bible* announced a new interpretation of the HEA and its implementing regulations without notice and comment rulemaking.

42.    In a split decision producing three separate opinions, two of the three 7th Circuit judges gave *Auer* deference to the Department's interpretation of its regulations as articulated in the United States' *amicus* brief.

43.    Judge Manion dissented. Judge Manion's opinion noted that the regulations do "not contain an exception to charging costs for any kind of repayment agreement, let alone a rehabilitation agreement." Judge Manion further criticized the plaintiff (and the Department) for conflating "repayment agreement[s] on terms satisfactory to the agency" with rehabilitation agreements, the latter of which does "not allow the borrower to escape collection costs and default reporting."

44.    A few weeks after filing its *amicus* brief, on July 10, 2015, the Department issued a Dear Colleague Letter (DCL) GEN-15-14 mirroring its position in *Bible*.[31]

45.    The Department withdrew this first DCL on March 16, 2017, less than two years after it was issued. In a second DCL, the Department stated that "the position set forth in the [first] DCL would have benefitted from public input on the issues discussed in the [first] DCL."[32] The second DCL continued that the Department

---

[31] Dear Colleague Letter (DCL) GEN 15-14 (July 10, 2015).
[32] Dear Colleague Letter (DCL) GEN-17-02 (Mar. 16, 2017).

"will not require compliance with the interpretations set forth in the [first] DCL without providing prior notice and an opportunity for public comment on the issues addressed in the DCL."

C.   THE RULEMAKING

      i.   Negotiated Rulemaking

46.   In August 2017, the Department announced a negotiated rulemaking process focused on borrower defense to repayment regulations that would also include the topic of to "what extent guaranty agencies may charge collection costs under 34 CFR 682.410(b)(6) to a defaulted borrower who enters into a loan rehabilitation agreement or other repayment agreement within 60 days of being informed that the guaranty agency has paid a claim on the loan."[33]

47.   "Guaranty Agency Collection Fees" was "Issue #7" in the Negotiated Rulemaking agenda.[34] The issue paper posed the following question to the negotiated rulemaking committee: "Should the Department revise 34 CFR 682.410(b), regarding the charging of collections costs by a guaranty agency to a defaulted borrower who responds within 60 days to the initial notice sent by the guaranty agency after it pays a default claim and acquires the loan from a lender?"[35]

---

[33] 82 Fed. Reg. 41194-95.

[34] For negotiated rulemaking materials, *see* https://www2.ed.gov/policy/highered/reg/hearulemaking/2017/borrowerdefense.html.

[35] Negotiated rulemaking proceeding materials are available at https://www2.ed.gov/policy/highered/reg/hearulemaking/2017/borrowerdefense.html.

48.     In its January 2018 negotiated rulemaking session, the Department circulated a proposed rule that would, in summary, "prospectively bar[] guaranty agencies from charging collection costs to a defaulted borrower who enters into a repayment agreement with the guaranty agency within 60 days of receiving notice of default from the agency."  The text of the proposed rule prohibited guarantors from charging default collection fees or a rehabilitation fee when a borrower enters into an acceptable repayment agreement—which the Department defined to include rehabilitation agreements—within 60 days of receiving the initial default notice.

49.     Ascendium commented during the negotiated rulemaking, arguing among other things that the Department's proposal conflicted with statute and thus was beyond the Department's rulemaking authority.

ii.   <u>Notice of Proposed Rulemaking</u>

50.     Following negotiated rulemaking sessions, the Department published a notice of proposed rulemaking in the Federal Register in July 2018.[36] The Department's draft regulations included a version of the Rule that was materially the same as the proposed rule circulated during the January 2018 negotiated rulemaking session.[37]

51.     In its notice, the Department asserted that it wanted to "encourage borrowers to enter into satisfactory repayment plans." The Department stated that its proposal was "consistent with the position that the Department previously took in

---

[36]  83 Fed. Reg. 37242.

[37]  *See* 83 Fed. Reg. 37324.

Dear Colleague Letter (DCL) GEN-15-14 (July 10, 2015)," which "was withdrawn in order to allow for public comment...."[38]

52.    Ascendium again submitted comments opposing the draft rule as, among other things, exceeding the Department's authority given the clear statutory language providing for the fees the Department proposed eliminating.

  iii.    <u>Publication of the Rule</u>

53.    On September 23, 2019, the Department promulgated the Rule, amending 34 C.F.R. § 682.410(b)(2) and adopting the draft rule in all material respects.[39] The Rule is effective July 1, 2020.[40]

54.    The Rule constitutes a final agency action.

55.    With the new Rule's additions to the preexisting rule denoted with underlining and deletions from the preexisting rule denoted with strike through marks, 34 C.F.R. § 682.410(b)(2) reads:

(2) *Collection charges.*

<u>(i)</u> Whether or not provided for in the borrower's promissory note and subject to any limitation on the amount of those costs in that note, the guaranty agency ~~shall~~ <u>may</u> charge a borrower an amount equal to the reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim <u>unless, within the 60-day period after the guaranty agency sends the initial notice described in paragraph (b)(6)(ii) of this section, the borrower enters into an acceptable repayment agreement, including a rehabilitation agreement, and honors that agreement, in which case the guaranty agency must not charge a borrower any collection costs.</u>

---

[38] 83 Fed. Reg. 37282.

[39] 84 Fed. Reg. 49926.

[40] 84 Fed. Reg. 49788.

<u>(ii) An acceptable repayment agreement may include an agreement described in §682.200(b) (Satisfactory repayment arrangement), §682.405, or paragraph (b)(5)(ii)(D) of this section. An acceptable repayment agreement constitutes a repayment arrangement or agreement on repayment terms satisfactory to the guaranty agency, under this section.</u>

<u>(iii)</u> The~~se~~ costs <u>under this paragraph (b)(2)</u> ~~may~~ include, but are not limited to, all attorney's fees, collection agency charges, and court costs. Except as provided in §§682.401(b)(18)(i) and 682.405(b)(1)(~~iv~~i)(B),[41] the amount charged a borrower must equal the lesser of—

<u>(A)</u> ~~(i)~~ The amount the same borrower would be charged for the cost of collection under the formula in 34 CFR 30.60; or

<u>(B)</u> ~~(ii)~~ The amount the same borrower would be charged for the cost of collection if the loan was held by the U.S. Department of Education.

56.    In summary, the Rule expressly prohibits guaranty agencies from charging either the standard default collection fees or the rehabilitation fee on any defaulted loan in which the borrower (1) enters "an acceptable repayment agreement" with the guarantor; (2) within 60 days of receiving the initial default notice from a guarantor; and (3) subsequently honors that "acceptable repayment agreement."

57.    The Rule defines the term "acceptable payment agreement" to include rehabilitation agreements.

58.    In its publication of the Rule, the Department "disagreed with the commentator who raised legal objections to the Department's proposed regulation." The Department cited the DCL and the *Bible* decision.  The Department also stated

---

[41] The soon-to-be-superseded rule's cross reference to 682.405(b)(1)**(iv)**(B) is a typographical error. That subsection does not exist and the content referenced—the statutorily prescribed rehabilitation fee—is contained at 682.405(b)(1)**(vi)**(B).

that "it is not reasonable for a guaranty agency to charge collection costs for collection activities it does not need to take because the borrower entered into and met the requirements of a loan rehabilitation agreement."[42]

## CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF

## FIRST CLAIM OF RELIEF: DEFENDANTS PROMULGATED FINAL REGULATIONS THAT EXCEED THEIR STATUTORY AUTHORITY

59.    Plaintiff incorporates by reference the allegations throughout this Complaint.

60.    Defendants' promulgation of the Rule exceeds their statutory authority under the HEA because, among other reasons, the Rule contravenes Congress' commands that:

a.    defaulted borrowers "shall be required to pay … reasonable collection costs," 20 U.S.C. § 1091a(b)(1);[43] and

b.    guarantors may "charge to the borrower an amount not to exceed 16 percent of the outstanding principal and interest at the time of the loan sale" when a defaulted loan is rehabilitated.[44]

61.    The HEA does not contain any exceptions, exclusions, or carve-outs to guarantors' ability to charge and borrowers' responsibility to pay standard default collection fees when a loan is in default.  Likewise, the HEA does not contain any

---

[42] 84 Fed. Reg. 49877.

[43] 20 U.S.C. § 1091a(b)(1)

[44] 20 U.S.C. § 1078-6(a)(1)(D)(i)(II)(bb); *see also see also* 20 U.S.C. § 1978-6(a)(1)(E)(i) (providing that rehabilitation fee shall be assessed when rehabilitated loan is assigned to Secretary instead of sold).

exceptions, exclusions, or carve-outs to guarantors' ability to charge and borrowers' responsibility to pay the rehabilitation fee whenever a defaulted loan is rehabilitated. The HEA does not, in turn, provide any authority for the Defendants to eliminate guarantors' ability to charge either fee when a defaulted borrower who rehabilitates his or her loan.

62.    In the alternative, statutory language does not permit a reasonable construction that would condition the availability of any collection, rehabilitation, or other related fees on a defaulted borrowers' activities rather than on a guarantor's performance of reasonable or mandated activities.

63.    Plaintiffs are entitled to have the Rule vacated and set aside pursuant to 5 U.S.C. § 706(2)(C).

## SECOND CLAIM OF RELIEF: THE DEFENDANTS PROMULGATED FINAL REGULATIONS THAT ARE ARBITRARY AND CAPRICIOUS AND OTHERWISE NOT IN ACCORDANCE WITH LAW

64.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

65.    Defendants' promulgation of the Rule is arbitrary, capricious and otherwise not in accordance with law because, among other reasons:

a.    The Rule conditions the ability to charge standard default collection fees or a rehabilitation fee on the timing of a defaulted borrower's entry into "an acceptable repayment plan," defined by the Rule to include a rehabilitation agreement, and not on whether a guarantor has or will engage in default-collection or other legally mandated activities with respect to defaulted loans.

Guarantors incur the same costs in connection with rehabilitating a loan regardless of when a borrower enters into a rehabilitation agreement. Guarantors perform collection-related activities costs every time a loan is in default. The Rule thus prevents guarantors from charging standard default collection fees and the rehabilitation fee for its reasonable or legally mandated collection-related activities.

b.     The Rule prevents guarantors whose diligence enables a borrower to promptly enter into an "acceptable payment agreement," defined by the Rule to include a rehabilitation agreement, from charging a borrower either standard default collection fees or a rehabilitation fee. The Rule permits less diligent guaranty agencies, which do not engage in prompt outreach, to charge standard default collection fees and the rehabilitation fee. The Rule operates in this fashion even where the costs of facilitating rehabilitation and other reasonable default collection activities incurred by the diligent and dilatory guaranty agencies are identical. The Rule thus creates a perverse incentive for guarantors to minimize their borrower outreach and penalizes guarantors who are most successful in effectuating loan rehabilitation or "acceptable repayment agreements."

c.     The Rule defines "acceptable repayment agreements" to include both "repayment agreement[s] on terms satisfactory to the agency" and rehabilitation agreements, despite significant differences between these arrangements, including the lack of guarantor discretion regarding the terms of a rehabilitation agreement.

66.     Plaintiffs are entitled to have the Rule vacated and set aside pursuant to 5 U.S.C. § 706(2)(A).

## REQUESTED RELIEF

67.     WHEREFORE, Plaintiffs pray for an order and judgment:

a.      Declaring that the Rule is promulgated without statutory authority within the meaning of 5 U.S.C. § 706(2)(C).

b.      Declaring that the Rule is not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A);

c.      Vacating and setting aside the amendments to the Rule;

d.      Enjoining Defendants and their officers, employees, and agents, from implementing, applying, or taking any action whatsoever to enforce the Rule;

e.      Enjoining Defendants and their officers, employees, and agents, from implementing, applying, or taking any action whatsoever to prevent guarantors from assessing standard collection fees after the 60-day debt substantiation period has concluded without a determination that the default is invalid.

f.      Enjoining Defendants and their officers, employees, and agents, from implementing, applying, or taking any action whatsoever to prevent guarantors assessing a rehabilitation fee based on when a defaulted borrower enters a rehabilitation agreement;

g.      Awarding to Plaintiffs fees and other expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412 or any other applicable legal authority; and

h.      Granting such other and further relief as the Court deems just and proper.

Dated: December 27, 2019

                          Respectfully Submitted,

                          **BELL GIFTOS ST. JOHN LLC**

                          /s/ Kevin M. St. John
                          Kevin M. St. John, D.C. Bar No. 473620
                          Roisin H. Bell
                          (application for admission *pro hac vice* forthcoming)
                          5325 Wall Street, Suite 2200
                          Madison WI 53718-7980
                          Ph: 608.216.7995
                          Email: kstjohn@bellgiftos.com
                                      rbell@bellgiftos.com

                          Attorneys for Ascendium Education Solutions, Inc.